GRIFFIN, J.
Thomas E. Kingsley [“Kingsley”], appeals an order of the Unemployment Appeals Commission affirming a referee’s decision denying him unemployment compensation. On appeal, Kingsley contends that the referee’s written decision was inconsistent in that it resolved conflicts in favor of the claimant, yet ruled for the employer. Also, Kingsley contends that the referee’s repeated interruptions and unclear decision deprived the parties of their due process rights. Although preparation of the decision was botched and the referee’s interference appears somewhat overbearing, we find no reversible error.
Kingsley was employed by DVW, Inc. as a support technician for MedWare, a software product sold by the employer. He began employment on May 3, 1999 and was discharged on March 14, 2000. Kings-ley applied for unemployment compensation benefits and the claims adjudicator ruled in his favor. MedWare appealed that decision.
At the appeal hearing, Patricia Deese [“Deese”], Kingsley’s immediate supervisor, testified that she terminated Kingsley for: (1) using unapproved methods for solving technical problems for clients; (2) rendering services to MedWare clients off-site, without permission from MedWare; (3) excessive phone use for personal reasons/abuse of the internet; and (4) excessive absenteeism. While the hearing *254 mainly focused on the second reason, the employer also cited to occurrences of unsatisfactory performance for which Kings-ley received reprimands and poor scores on his July performance evaluation. In August, the employer again reprimanded Kingsley for excessive personal phone calls and internet abuse. Kingsley transferred to another department, but his performance failed to improve. In October, two clients complained about Kingsley’s poor technical support and MedWare reprimanded Kingsley.
In February, Deese learned that Kings-ley had agreed to perform services for MedWare clients off-site. She informed Kingsley that this practice violated company rules but allowed Kingsley to finish the project, so as to not penalize the client. The employer later learned that Kingsley was currently performing or had performed similar services for other clients. The employer decided to have Kingsley sign a stricter non-compete agreement, which Kingsley refused to do. MedWare fired Kingsley.
Kingsley admits that he performed hardware services for a MedWare client, that he received money for such services and that his supervisor told him not to perform this work.
During the appellant’s cross-examination of Deese, the following occurred:
APPELLANT: Okay. Patricia, you said that I had a reprimand — that I didn’t sign that one reprimand. Let’s see — if you take a look — -on-
HEARING OFFICER: You’re giving testimony, Mr. Kingsley.
APPELLANT: No, no. I have a question.
HEARING OFFICER: Mr. Kingsley—
APPELLANT: — I’m trying to get to it, sir—
HEARING OFFICER: — Mr. Kingsley, why are you interrupting me, when I’m trying to explain something to you? Is there any reason why you’re not letting me do what I need to help you?
APPELLANT: No. Go ahead sir.
HEARING OFFICER: Okay. When you tell me, “no, no, no,” you’re arguing with me, too, and that’s really not an appropriate thing to do during these hearings. I do eight or nine of these a day, every week.
APPELLANT: Okay.
HEARING OFFICER: And, so, I really do know my job; up and down, back and forwards.
APPELLANT: I understand, sir.
HEARING OFFICER: You have to ask a question. You cannot make a statement of any kind during cross examination. You cannot give testimony during cross examination. If you have a legitimate question about something that she said, then, you can go ahead and ask her. If you just want to give your testimony, then I’ll give you that opportunity when it’s your turn.
In his decision issued on June 7, 2000, the appeals referee made the following findings of fact:
The claimant was employed with this firm as a support tech from May 3,1999, through March 14, 2000. The supervisor of technical support was dissatisfied with the claimant using unapproved methods of doing the work, excessive telephone use, and excessive absenteeism. The final incident occurred on February 28, 2000, when the supervisor of technical support discovered that the claimant had performed services for one of the employing unit’s customers outside of work. The claimant was paid for this work.
*255 The employing unit has a disclosure agreement that the claimant signed that prohibits any employee from using its “customer list” “during or anytime after” employment. The claimant was receiving telephone calls from one of the employing unit’s customers asking that the claimant, personally provide service for the customer. The claimant reported this to his supervisor and the supervisor told the claimant that he “can’t fix that.” The claimant did so off of company premises, on his own time, and received payment for his work. The supervisor of technical support had a new “non-compete” agreement drawn up for the claimant to sign. The claimant told the employing unit that he would not sign it because he had consulted a lawyer.
The claimant was discharged for rendering his personal services to a company customer, using unapproved methods, excessive phone use, and excessive absenteeism.
The referee then, in part, made the following conclusions of law:
The hearing officer is unable to find any nexus among using unapproved methods, excessive telephone use and excessive absenteeism in relationship to the final incident that caused the claimant to be discharged.
Prior to the final incident, the claimant reported that the customer was asking him to do work and this supervisor told the claimant that he could not do the work. The claimant had signed the company policy regarding disclosure and met with the employing unit’s customer for profit. The claimant’s actions were in violation of his duties and obligations to the employing unit and constitute misconduct as defined by the Florida Statutes. There were conflicts in testimony that came before this referee for resolution. All relevant conflicts are resolved in favor of the claimant based on the candor of the parties at the hearing.
The referee then “affirmed” the decision of the claims adjudicator, who had ruled in favor of the claimant. One week later, however, the referee amended the decision by simply changing the word “affirmed” to “reversed”. All other portions of the June 7 decision remained intact. The Unemployment Appeals Commission affirmed this decision. Kingsley urges that if “[a]ll relevant conflicts are resolved in favor of the claimant based on the candor of the parties at the hearing”, the referee had to find that the appellant was discharged for poor performance.
We conclude the referee could have found the appellant credible and still rule for the employer. The appellant admitted that he performed services for a MedWare client for profit. He admitted that, prior to rendering the services, his supervisor told him that he could not perform such services. Appellant, however, “felt bad” for the client, performed the hardware services, and received compensation. Because appellant’s own version of the facts amounts to misconduct, the referee could have believed appellant’s testimony and nevertheless found for the employer.
AFFIRMED.
HARRIS and SAWAYA, JJ„ concur.